```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
VERNON NEIL,                             :
                       Petitioner,       :
                                         :    07 Civ. 6685 (DLC)
            -v-                          :
                                         :    OPINION & ORDER
JAMES WALSH, Superintendent of Sullivan  :
Correctional Facility,                   :
                       Respondent.       :
                                         :
----------------------------------------X
```

Appearances:

Pro se Petitioner:
Vernon Neil
97-A-2322
Sullivan Correctional Facility
325 Riverside Drive
Fallsburg, NY 12733-0116

For Respondent:
Tracy Siligmueller
Assistant District Attorney
Office of the District Attorney, Bronx County
198 East 161st Street
Bronx, NY 10451

DENISE COTE, District Judge:

Vernon Neil brings this timely pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on three counts each of Robbery in the First Degree, Rape in the First Degree, and Sodomy in the First Degree.  This case was referred to Magistrate Judge Frank Maas for a report and recommendation ("Report").  The Report was filed on October 8, 2008, and recommends that the writ be denied.  Neil has

objected to the Report.  For the following reasons, the Report is adopted, and the petition is denied.

BACKGROUND

The facts relevant to Neil's petition are set out in the Report and summarized here, or taken from the trial transcript. Neil was tried in New York Supreme Court, Bronx County.  Justice Harold Silverman presided over the jury trial.  Before jury selection began, Justice Silverman inquired as to whether Neil wished to exercise his right under People v. Antommarchi, 80 N.Y.2d 247 (1992), to be present during voir dire sidebars with prospective jurors.  Neil's counsel initially stated that Neil did wish to be present at such sidebars.  In response, Justice Silverman explained that if Neil chose to be present, he would be escorted to the sidebar by three court officers, and that the jury would know "immediately" that Neil was in custody.  Neil's counsel then conferred with Neil and informed the court that at this point Neil did not wish to be present at such sidebars. Neil did not attend any voir dire sidebars with prospective jurors.

The evidence at trial established the following.  On the morning of April 29, 1995, Neil approached Claudine,[1] who was walking along Fordham Road in the Bronx, and proceeded to rob her and rape her at gunpoint.  During the rape, Claudine expressed that she had to go to the bathroom.  She urinated and defecated on the ground, and then Neil continued the rape.  Claudine stated that while being anally raped she "felt this little tingling in [her] anus so [she] knew that he was just about to ejaculate and he withdrew and it spilled all over the floor."  At some point during the encounter Neil took Claudine's money, gold earrings, and watch, and he also took her credit card from her purse.

After notifying the police, the police took Claudine back to the lot where she was raped, where they saw Claudine's feces on the ground but did not collect a sample.  Claudine was then taken to the hospital.  She was asked by hospital staff not to use the bathroom before she was examined in order to preserve potential evidence, but she was unable to fulfill that request.  The doctor examining Claudine found, <u>inter alia</u>, vaginal and anal lacerations consistent with forcible penetration.  The doctor used a sexual assault kit to collect potential evidence.

---

[1] The briefs on appeal do not use the full names of the victims pursuant to New York Civil Rights Law § 50-b(1).  The Report adopts this practice, and this Court will do so as well.

That same morning, Neil approached two sisters, Kimberly and Vanessa, who were walking along Grand Concourse in the Bronx, and he proceeded to rob them and rape them at gunpoint. Neil stopped the rape when he saw two men on the roof of a car wash watching them, and wiped himself with a scarf the sisters gave him.

The sisters were taken to a hospital where Dr. Debra Rana conducted examinations, including the preparation of sexual assault evidence kits. Rana found that both sisters had, inter alia, vaginal lacerations. Rana also stated that Vanessa had a substance in her vaginal area that "smelled like semen."

Lynn Ezekial, a chemist employed by the New York City Police Department Crime Laboratory, tested the evidence collected in the three victims' sexual assault kits and the scarf Neil used to wipe himself following the rapes of Kimberly and Vanessa. Ezekial testified as an expert in serology, based upon her position, her prior experience analyzing sexual assault evidence, her membership in forensic associations, and her prior expert testimony. Ezekial stated that none of the evidence she analyzed tested positive for the presence of semen or sperm. She explained that there were several reasons semen or sperm may not be found in such tests of a victim who was forcibly raped, including

4

> if the perpetrator was wearing a condom, if the
> perpetrator did not ejaculate or ejaculated in a
> different area of the body than where the sample was
> taken, if the victim had either washed herself or
> urinated, if the sample was not taken from the vaginal
> cavity . . . [or] if the sample was taken from the
> part of the vagina that might not have had the deposit
> of semen because the semen does not get equally
> dispersed within the body cavity.

All three victims testified that they had picked Neil out of a lineup as the person who raped them. The three victims also identified Neil in court as the person who raped them.

Neil's defense was that these identifications were mistaken. He called two witnesses whose testimony suggested that it might not have been possible for a single rapist to have been at both crime scenes in the time frame established by the victims' testimony, as well as two alibi witnesses.

The jury returned a verdict of guilty on three counts each of Robbery in the First Degree, Rape in the First Degree, and Sodomy in the First Degree. Neil was sentenced by Justice Silverman on March 18, 1997. At his sentencing, Neil "claim[ed] that he did not realize that his first conviction was not a youthful offender adjudication."[2] Justice Silverman found Neil's belief "irrelevant" and found him to be a persistent violent

---

[2] A transcript of Neil's sentencing has not been located. The description of Neil's sentencing is taken from the statement of facts in Neil's brief to the appellate division.

felon under New York Penal Law § 70.08.  Neil was sentenced to three consecutive prison terms of 25 years to life.

Neil appealed this conviction to the Appellate Division, First Department.  He argued on appeal that: (1) he was coerced into waiving his Antommarchi rights by the trial judge's warning that court officers would escort him to the sidebars and cause the jury to see that he was in custody, and (2) his sentencing by the trial judge as a persistent violent felony offender was unconstitutional pursuant to the principles announced in Apprendi v. New Jersey, 530 U.S. 466 (2000).  In a pro se supplemental brief (and addendum to that brief), Neil also argued that (1) he was denied due process of law because (a) the People failed to collect and preserve potentially exculpatory DNA evidence, and (b) that Ezekial was unqualified to testify as an expert to certain matters; and (2) his trial counsel was constitutionally ineffective in failing to (a) investigate why DNA testing and fingerprint analysis was not done, (b) call an expert witness to rebut the People's experts, (c) adequately cross-examine the People's witnesses, and (d) object to certain testimony.

The Appellate Division affirmed the conviction in June 2006.  People v. Neil, 818 N.Y.S.2d 46 (1st Dep't 2006).  The court found that Justice Silverman's warning that court officers would escort Neil to voir dire sidebars did not coerce his

6

waiver of his Antommarchi rights.  As for Neil's challenge to his sentence, the court found that it was unpreserved and, in any event, without merit since Neil was adjudicated as a persistent violent felony offender "based entirely on his prior convictions."  Id. at 47.  As for Neil's ineffective assistance claims, the court noted that they involved matters outside the record and were thus unreviewable on direct appeal.  The court noted, however, that to the extent these claims could be reviewed on the existing record, the trial counsel had provided effective assistance.  Finally, the court "considered and rejected" the remaining claims in Neil's pro se supplemental brief.  Id.  In August 2006, Neil's application for leave to appeal to the Court of Appeals was summarily denied.  People v. Neil, 7 N.Y.3d 815 (2006).

The instant petition was received by this Court's Pro Se Office on June 25, 2007.  The petition reasserts all of the claims made by Neil and his counsel to the Appellate Division.

DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The court must make a de novo determination of the portions of the report to which petitioner objects.  28 U.S.C. § 636(b)(1); see United

States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  Figueroa v. Riverbay Corp., No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions.  Habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (d)(2).  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. at 2254(e)(1).

A.  Antommarchi Claim

Neil contends that he was coerced into waiving his Antommarchi rights by the trial judge's warning that court officers would accompany him to voir dire sidebars.  The Report

8

recommends dismissal of this claim because it is not cognizable on habeas review as it relates solely to a state court right. The Report concludes that while under New York State law, defendants have a right to be present during voir dire sidebars with prospective jurors, defendants do not have that same right under federal law.  See, e.g., Perez v. Greiner, No. 00 Civ. 5504(RCC)(KNF) 2005 WL 613183, at *5 (S.D.N.Y. March 14, 2005) (finding "no clear Supreme Court precedent supporting a claim that absence from a sidebar conference during voir dire violates the Sixth Amendment"); see also Morales v. Artus, 05 Civ. 3542(BSJ)(AJP), 2006 WL 3821488, at *17-18 (S.D.N.Y. Dec. 28, 2006).[3]  The Report also found that even if Neil had a cognizable federal right to be present at such sidebars, he had waived that right, and he had not adduced clear and convincing evidence that his waiver was coerced.  Neil has not objected to this aspect of the Report, and the Court can discern no clear error in the Report's reasoning.  Accordingly, Neil's Antommarchi claim is rejected.

---

[3] Neil appears to object to the Report's citation of cases that were decided after his conviction, claiming that such citation violates the Ex Post Facto clause of the Constitution.  This argument is without merit.  See, e.g., California Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts" (citation omitted)).

B.  Sentencing Claim

Neil's petition contends that his sentencing as a persistent violent felony offender violated the principles announced in Apprendi, 530 U.S. 466.  The Report recommends dismissal of this claim on the grounds that consideration of the claim on habeas is barred by the state court's denial of the claim on an alternate and independent state ground, and that the claim is in any event without merit.  As to the first ground, the Report correctly notes that Neil's failure to timely object to his sentence left this issue unpreserved for appellate review, and that such a procedural default is an adequate and independent state ground precluding habeas review, despite Neil's contention in his (counseled) appellate brief that "[n]o objection [was] necessary because [he] has a fundamental right to be sentenced according to law."  The Report found that habeas review of such a procedurally defaulted claim could only occur if Neil showed cause for the default and prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice, Coleman v. Thompson, 501 U.S. 722, 750 (1991), and that Neil had not made a sufficient showing on this point.

Neil's objection to this aspect of the Report is the contention that his trial counsel's failure to timely object was constitutionally ineffective assistance of counsel.  This

10

argument, however, was not presented to the Appellate Division, in Neil's habeas petition, or to Magistrate Judge Maas, and therefore will not be considered here.  See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); Strogov v. Attorney Gen. of N.Y., 191 F.3d 188, 191 (2d Cir. 1999).  Moreover, even assuming that the failure to object was ineffective assistance and that such assistance demonstrated cause for the procedural default, Neil has failed to demonstrate prejudice from the default.  The Appellate Division considered the merits of his sentencing challenge despite the procedural default and found that Neil's sentence did not violate Apprendi's rule that facts that increase a defendant's sentence, other than the fact of a prior conviction, must be proved to a jury beyond a reasonable doubt. 530 U.S. at 490.

   The Report, considering the merits of Neil's sentencing challenge, noted that while district courts in this Circuit are split on whether a related New York statute (the persistent felony offender statute, New York Penal Law § 70.10) violates Apprendi and its progeny because the sentencing judge must make certain findings beyond the fact of a prior conviction that relate to the history and characteristics of the defendant, the persistent violent felony statute (NY Penal Law § 70.08) that was applied to Neil requires only the consideration of the fact of prior convictions.  The Report concluded that because § 70.08

11

only requires the consideration of prior convictions by the sentencing Judge, it does not violate Apprendi and its progeny. See, e.g., Boutte v. Poole, No. 07 Civ. 8412(GEL), 2008 WL 3166696, at *3 (S.D.N.Y. Aug. 4, 2008) ("district courts in this circuit have routinely rejected . . . challenges to § 70.08 based on Apprendi" (citation omitted)). Neil has not objected to the Report's conclusions as to the merits of his sentencing challenge, and the Court can discern no clear error in the Report's reasoning. Accordingly, Neil's sentencing claim is rejected.[4]

---

[4] Neil also appears to assert in his Objections to the Report that his counsel at sentencing should not have simply repeated Neil's belief that one of his prior convictions was a youthful offender conviction, but that counsel should have independently investigated Neil's prior convictions and challenged the consideration of those convictions as predicate violent felonies. This argument, however, was not presented to the Appellate Division, in Neil's habeas petition, or to Magistrate Judge Maas, and therefore will not be considered here. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); Strogov v. Attorney Gen. of N.Y., 191 F.3d 188, 191 (2d Cir. 1999). Neil also has suggested no potential alternative basis upon which his counsel should have challenged his prior convictions as predicate violent felonies.

   Neil also objects to the resolution of his sentencing challenge at this point given the fact that the sentencing minutes cannot be located. Because the only sentencing facts relied upon in deciding this petition were taken from the description of the sentencing in Neil's appellate brief, and Neil does not challenge the accuracy of the narrative summary provided in that brief, the absence of the sentencing minutes does not preclude this Court's resolution of the instant petition. See Stevenson v. Strack, No. 96 Civ. 8429(DC), 1999 WL 294805, at *1 n.1 (S.D.N.Y. May 11, 1999) ("Rule 5 of the Rules Governing § 2254 Cases permits the use of 'a narrative summary of the evidence' in lieu of an unavailable state court

C.   <u>Failure to Collect and Preserve Potentially Exculpatory Evidence</u>

Neil claims that his due process rights were violated by the failure of the People to collect and preserve any of the feces found at the scene of Claudine's rape, because such evidence could have been tested for DNA and potentially have exculpated him.  Neil makes a similar contention regarding the substance Rana found on Vanessa that smelled like semen.  The Report correctly notes that Neil's claim is governed not by <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), which sets forth the People's duty to disclose evidence in it possession that is material to the issue of the defendant's guilt, but rather by <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), which dealt with the issue of failing to preserve potentially useful evidence.  Under <u>Youngblood</u>, a defendant claiming that the People failed to preserve or collect such potentially exculpatory evidence can only demonstrate a denial of due process if he can show that the police acted in bad faith.  <u>Id.</u>  The Report rejected Neil's claim, finding no evidence of bad faith on the part of the police, and noting that there was no showing that the feces would have even contained genetic material.

---

transcript"); <u>see also</u> <u>Bundy v. Wainwright</u>, 808 F.2d 1410, 1415 (11th Cir. 1987) ("If no transcript is available, a narrative summary may be furnished."); <u>Anderson v. Woods</u>, No. 07 Civ. 2180(NRB), 2008 WL 2440226, at *1 n.1 (S.D.N.Y. June 12, 2008).

13

In Neil's objections to the Report, he concedes that he is not arguing that the police acted in bad faith in failing to collect and preserve the feces, which is fatal to his claim. Instead, Neil's objections make much of one line of the Report which states, in explaining why this case was not about the withholding of exculpatory evidence in violation of <u>Brady</u>, that "there was <u>no evidence suggesting that the rapist's semen was deposited in Claudine's anus</u> or on her feces, much less that feces had been tested and revealed the DNA of another man." (Emphasis supplied.)  Neil argues that this statement is incorrect, citing the fact that Claudine testified to the grand jury that Neil ejaculated into her "butt."  At trial, Claudine testified that she "felt this little tingling in [her] anus so [she] knew that he was just about to ejaculate and he withdrew and it spilled all over the floor."  On cross-examination, Claudine was read her grand jury testimony where she stated that "after [Neil] ejaculated, he withdrew himself."  When asked whether the rapist ejaculated inside her, she stated that "[h]e started.  There might have been like a preseminal, or whatever you call it."  This testimony does not support Neil's claim that the People should have collected and preserved Claudine's feces for DNA testing, however, because Claudine testified that she defecated before the rapist ejaculated.  Additionally, this testimony does not alter the fact that there was no showing that

14

the People had any sort of exculpatory evidence in their possession that they failed to turn over; Neil's claim still is that the People should have collected and preserved Claudine's feces because of potentially exculpatory DNA evidence to be gained.

> Under Brady, the government has a due process obligation to disclose without delay evidence in its possession that is material to either guilt or punishment.  The prosecution is not, however, required to disclose evidence it does not possess or of which it is not aware, and there is no due process requirement that the government use any particular investigatory tool, including quantitative testing, to secure exculpatory evidence.

Smith v. Edwards, No. 98 Civ. 7962(DLC), 2000 WL 709005, at *6 (S.D.N.Y. May 31, 2000) (citation omitted).  Because Neil has not demonstrated bad faith on the part of the police, his claims that the People should have collected and preserved certain potentially exculpatory evidence are rejected.[5]

---

[5] Neil also objects to the Report's failure to discuss the fact that the respondent submitted, as an exhibit to its opposition, a letter from the Director of the Office of Forensic Services, dated August 5, 2005, that stated that a match of Neil's DNA had been made with a certain specimen, which upon information and belief the respondent stated was a specimen recovered from Kimberly.  The respondent stated that Neil's pro se addendum to his brief to the appellate division had requested that certain evidence be re-tested for DNA.  The letter from the Director stated that "[i]f legal action is anticipated, based on this information, it is strongly recommended that a new DNA specimen be collected from the named individual."  Neil argues that respondent should "forward him a copy of the alleged test and chemical procedures used in making the DNA test, and exactly when and where did they (they the People) obtain a copy of his DNA, in order for it to be within the State DataBank Index,"

D.  Admission of Expert Testimony

Neil's petition asserted that his due process rights were violated by Ezekial's expert testimony as to matters outside her expertise, specifically by her testimony regarding the reasons sperm or semen might not be found in forensic tests of rape victims, and to the fact that she was allowed to rely on conversations with other serologists in forming her expert opinions without the People having to call those other serologists as witnesses.  The Report rejected these claims.  It found that the admission of expert testimony is committed to the sound discretion of the trial judge and that the trial judge did not abuse that discretion in this case.  The Report also found that expert opinions can be based on inadmissible evidence if that evidence is of the type upon which experts in field reasonably rely.  See Fed. R. Evid. 703.  Finally, the Report noted that even if Ezekial's testimony was improper, admission of such testimony does not violate due process unless it was so unfair as to "violate[] fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (citation

---

that Neil should submit to a new DNA test, and that issues surrounding this DNA match should be considered in an evidentiary hearing in a trial court.  The DNA match reflected in the August 5, 2005 letter was not relied upon as evidence used to obtain Neil's convictions (Neil's judgment of conviction was rendered on March 18, 1997), and therefore Neil's objections to and concerns regarding this match are not at issue in the instant petition.

16

omitted).  The Report concluded that given that Neil's defense was not that the victims had not been raped, but that he was the victim of mistaken identity, Ezekial's testimony did not implicate Neil as the rapist and thus could not have been so unfair as to violate Neil's due process rights.  To the extent Neil objects to this aspect of the Report, he simply reasserts the arguments made in his petition.  Finding no clear error in the Report's reasoning, this claim is rejected.

E.   Ineffective Assistance of Counsel

Neil's petition asserted that he was denied effective assistance of counsel by his counsel's failure to (a) investigate why certain evidence was not tested for DNA, (b) call experts to rebut the People's experts, (c) adequately cross-examine Ezekiel and Rana, and (d) object to certain testimony given by Ezekiel, Claudine, and Rana.  The Report correctly notes that Neil's ineffective assistance claims are unexhausted.  Neil's ineffective assistance claims involve matters outside the record, Neil, 818 N.Y.S.2d at 47, and such claims cannot be raised on direct appeal but must be presented to the state court via a post-conviction motion pursuant to Section 440 of the New York Criminal Procedure Law.  See, e.g., People v. Love, 57 N.Y.2d 998, 999-1000 (1982).  Neil has not made such a post-conviction motion in state court.

17

The Report also found that, in any event, Neil's ineffective assistance claims were without merit, as Neil has not shown that his counsel's performance "fell below an objective standard of reasonableness" and that there was a "reasonable probability that, but for, counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  Neil's only objection to this aspect of the Report concerns the admission of Rana's testimony regarding the presence of a substance in Vanessa's vaginal area that "smelled like semen." The Report concluded that defense counsel's failure to object to this testimony was not ineffective assistance, as the issue of whether to object or raise an issue on cross-examination is a matter of trial strategy, and that in any event, the admission of this testimony was not prejudicial to Neil because it did not in any way implicate Neil as the rapist.  In his objections, Neil objects not to counsel's failure to object to this testimony, but to the admission of such testimony as prejudicing his right to a fair trial.  As the Report correctly concluded, however, even if this testimony was somehow improper, given Neil's defense of mistaken identity, the testimony regarding the presence of semen cannot be said to have violated his right to a fair trial.  See Dunnigan, 137 F.3d at 125.  As to the Report's conclusions as to Neil's other claims of ineffective assistance,

18

to which Neil did not object, the Court can discern no clear error in the Report's reasoning. Accordingly, Neil's ineffective assistance of counsel claims are rejected.

CONCLUSION

The recommendation of Magistrate Judge Maas is adopted and the petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of appealability. Neil has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:   New York, New York
         February 17, 2009

_____
DENISE COTE
United States District Judge

COPIES SENT TO:

Vernon Neil, #97-A-2322
Sullivan Correctional Facility
325 Riverside Drive
Fallsburg, NY  12733-0116


Tracy Siligmueller, Esq.
Assistant District Attorney
Office of the District Attorney, Bronx County
198 East 161st St.
Bronx, NY 10451